UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Delbert W. Hargis Jr.<br><br>Plaintiff,<br><br>vs.<br><br>Michael Werner<br><br>Defendant, | Civil Case No: 7:16-CV-343 (MAD/ATB)<br><br>CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983 |

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAR 25 2016
AT____ O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

Plaintiff(s) demand(s) a trial by: ____ JURY __X__ COURT (Select only one).

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983, New York State Social Service Law § 422 (5) (b) (i), New York Judiciary Law § 487, and New York State Family Court Law § 1012(h). The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

## PARTIES

2. Plaintiff: Delbert W. Hargis Jr.

   Address: 27882 New York State Route 342
   Lott #226
   Black River, New York 13612

3. Defendant: Michael Werner

Official Position: Legal Counsel for the Jefferson County Department of Social Services

Address: Jefferson County Department of Social Service Building
250 Arsenal Street
Watertown, NY 13601

FACTS

4. From February 12, 2012 thru July 30, 2012 there was an open Jefferson County Child Protective Service Unit Investigation of my home regarding among other things allegations of sexual abuse.

5. From February 12, 2012 thru July 30, 2012 during the Jefferson County Child Protective Service Unit Investigation both the Plaintiff's children told CPS that no one had touched them inappropriately and the investigation resulted in the report being unfounded.

6. From July 19, 2012 through September 28, 2015 the Plaintiff exercised the Plaintiff's First Amendment Right to Freedom of the Speech and called the Plaintiff's children "Liars!" and called the disclosures "Retaliation!" when the Plaintiff was faced with the following information:

(a) The Jefferson County Child Protective Services Unit Investigation report, which included allegations of sexual abuse, that the investigation began on February 12, 2012 and ended with the report being unfounded on July 30, 2012.

(b) In the Jefferson County Child Protective Services Unit Investigation

report that began on February 12, 2012 and ended with the report being unfounded on July 30, 2012 both the Plaintiff's children denied being abused sexually or otherwise.

(c) On July 17, 2012, Nicole E. Hargis, the Plaintiff's wife, filed a Jefferson County Family Court refrain from petition asserting both of the Plaintiff's children has been harassing her for years and was requesting an order of protection for the oldest of the Plaintiff's children.

(d) On July 19, 2012 the Plaintiff's children disclosed to the Jefferson County Child Protective Services Unit that the Plaintiff's wife had been sexually abusing them for years.

(e) On August 10, 2012 the Defendant used the new allegation of sexual abuse disclosed to the Jefferson County Child Protective Services Unit on and after July 19, 2012 to file a petition in Jefferson County Family Court pursuant to Article 10 of the New York State Family Law Act.

(f) The CPS report that began on February 12, 2012 was still open/active on July 19, 2012.

(g) The February 12, 2012 CPS investigation was not closed and sealed until July 30, 2012 and it concluded with a finding that there was no credible evidence of neglect and abuse, sexual or otherwise regarding the Plaintiff's children.

(h) The August 10, 2012 filing of the Jefferson County Family Court petition was within 11 days from the time the CPS investigation that began in February 12, 2012 was closed and sealed on July 30, 2012.

(i) The time frame: (1) July 17, 2012 the refrain from petition was filed by the Plaintiff's wife, (2) July 19, 2012 the sexual abuse allegations against the petitioner began by the Plaintiff's children, (3) July 30, 2012 the Jefferson County Child Protective Services Unit unfounded the February 12, 2012 investigation which included allegations of sexual abuse, and (4) August 10, 2012 the Defendant filed the Article 10 Jefferson County Family County Petition alleging sexual abuse by the Plaintiff's wife.

(j) After July 19, 2012 the Plaintiff was going through tremendous grief, shock, and disbelief after the Plaintiff's children disclosed that they had been sexually abused by someone the Plaintiff loved and trusted.

(k) The grief, shock, and disbelief of the disclosures after July 19, 2012 caused the Plaintiff to be in a mental state of denial, the first stage in the grieving process.

(l) On July 19, 2012, when the allegations began it was just at the tail end of a six month CPS investigation in which the Plaintiff's children were so adamant that no one had abused them sexually or otherwise and was so adamant no one touched their private parts during the whole six month long investigation.

(m) The Plaintiff's children were so convincing in their assertion that no one had touched them inappropriately during the whole six month long CPS Investigation that began on February 12, 2012 that CPS believed them and unfounded the report on July 30, 2012.

(n) From July 19, 2012 thru November 2012 the Plaintiff's children had

disclosed to the Jefferson County Child Protective Unit allegations of sexual abuse that were inconsistent with each other's disclosures.

(o) From July 19, 2012 thru November 2012 the Plaintiff's children had disclosed to the Jefferson County Child Protective Unit allegations of sexual abuse that were inconsistent with their own disclosures.

(p) The following were some of the most important inconsistent disclosures:

a. One child stating the abuse took place while he was alone only,
b. One child stating the abuse only took place with her and a friend only,
c. One child disclosed that all three children would be in the same room, at the same time, when the sexual abuse occurred.
d. One child was adamant with the CPS investigator and his therapist that no sexual abuse occurred while he was 14 yet he signed statements with the Jefferson County Sheriff and testified in open court regarding two sexual abuse encounters which took place when he was 14.
e. One of children who disclosed that only her and her friend was sexually abused together also was just as adamant that the sexually abuse ended in October 2009.
f. While the friend on the other hand was adamant the sexual abuse continued with all three of them together throughout 2010, 2011, and ended in July 2012.
g. The friend also disclosed that the sexual abuse began years before the Plaintiff's children claim the sexual abuse started.

(q) From July 19, 2012 thru November 2012 the children had told the Jefferson County Child Protective Unit some sexual abuse disclosures that the Plaintiff had knew the disclosures to be untrue based on the Plaintiff's personal knowledge.

(r) The Plaintiff's children made disclosures of sexual abuse which the Plaintiff's children claimed sexual abuse by their stepmom during 2007 while the Plaintiff was at work.

(s) The Plaintiff in 2007 was working for Family Home Care Inc. and only worked during the hours the Plaintiff's children were at school or during the summer the Plaintiff's children were at day camp which makes this disclosure in (r) above impossible.

(t) There never was a time in 2007 when the Plaintiff was not home when the Plaintiff's children were home.

(u) In 2007, the Plaintiff being home before the Plaintiff's children got home from school or day camp was planned that way thru the Plaintiff's employer and it always worked out that way.

(v) A third child's disclosure in November 2012 which included details regarding the Plaintiff's two children but was completely inconsistent with the Plaintiff's two children's sexual abuse disclosures.

(w) There was no evidence of sexual abuse absent the disclosures.

(x) The Plaintiff's wife was convicted of sexual abuse solely based on the belief she was guilty and not based on any evidence she was guilty.

7. In the summer of 2012 thru March of 2015 the Plaintiff drew a conclusion based the Plaintiff's denial and on all the information listed (a) thru (x) of above paragraph 6 which just feed the Plaintiff's denial that the children's disclosures of sexual abuse was:

(a) Made up and not true.

(b) Was an act of retaliation by the Plaintiff's children as a result of the July 17, 2012 filing of the Jefferson County Family Court reframe from petition filed by Nicole Hargis which named the Plaintiff's two children as harassers because the disclosures started just two days after the filing of the petition.

8. In combination with the Plaintiff's denial and as the result of the Plaintiff's conclusion of all the information listed (a) thru (x) of above paragraph 6, the Plaintiff exercised what the Plaintiff believed to be the Plaintiff's constitutionally protected First Amendment Right of Freedom of the Speech.

9. The Plaintiff exercised what the Plaintiff believed to be the Plaintiff's constitutionally protected First Amendment Right of Freedom of the Speech when the Plaintiff called the Plaintiff's children Liars based on all the information listed in (a) thru (x) of above paragraph 6.

10. The Plaintiff exercised what the Plaintiff believed to be the Plaintiff's constitutionally protected First Amendment Right of Freedom of the Speech when the Plaintiff called the Plaintiff's children's actions retaliation based on all the information listed in (a) thru (x) of above paragraph 6.

11. From August 10, 2012 thru the Present under the color of law the Jefferson County Department of Social Services at the direction of the Defendant as Lead Legal Counsel for the Jefferson County Child Protective Service Unit has pursued a Jefferson County

Family Court petition on August 10, 2012 which has penalized the Plaintiff, Delbert W. Hargis Jr., for exercising the Plaintiff's First Amendment Right to Freedom of the Speech while going through the grieving process and has hindered the Plaintiff's freedom to speak freely with the fear of being penalized further by having an order of protection placed against the Plaintiff which severely limited the Plaintiff ability to see all three of the Plaintiff's children.

12. Over the course of three years through counselling and education the Plaintiff learned:

(a) That the inconsistent statements were caused by the trauma from the abuse.

(b) The children not reporting the abuse during the previous Jefferson County Child Protective Services Investigation was typical from children who are being sexually abused.

(c) The denial was just part of the natural grieving process and the other information contained in (a) thru (x) of paragraph 6 above just feed the Plaintiff's denial which made it harder for the Plaintiff to accept the sexual abuse disclosures as being reality while going through the grieving process.

13. That all being stated, the Plaintiff while going through the grieving process still had a constitutionally protected right to form the Plaintiff's earlier opinion based on all the information listed (a) thru (x) of above paragraph 6, thou ill-informed, and vocalize the Plaintiff's opinion while coping with grief without fear of being penalized by the Defendant who was acting under the color of law which resulted in the deprivation of the Plaintiff's rights of freedom of the speech while going through the grieving process.

14. The Defendant was acting under the color of law when on August 10, 2012 the Defendant filed the Article 10 family court petition in Jefferson County Family Court

which resulted in the Defendant causing the deprivation of the Plaintiff's rights of freedom of the speech while going through the grieving process by having an order of protection placed against the Plaintiff which severely limited the Plaintiff ability to see all three of the Plaintiff's children with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

15. The Defendant was acting under the color of law when on or after August 10, 2012 the Defendant requested and was granted by the Jefferson County Family Court orders of protection against the Plaintiff on all the Plaintiff's children which resulted in the Defendant causing a deprivation of the Plaintiff's rights of freedom of the speech while going through the grieving process and by having an order of protection placed against the Plaintiff it severely limited the Plaintiff ability to see all three of the Plaintiff's children with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

16. The Defendant was acting under the color of law when on May 5, 2014 the Defendant filed a petition to terminate the Plaintiff's parental rights with the Plaintiff's youngest child which resulted in the Defendant causing a deprivation of the Plaintiff's rights of freedom of the speech while going through the grieving process with the fear of losing all contact with the Plaintiff's youngest child if the Plaintiff continued to exercise his freedom of the speech.

17. On March 16, 2016, the termination of parental rights petition the Defendant filed was withdrawn.

18. The Plaintiff has been penalized by the Defendant who was acting under the color of law when the Defendant requested and has granted Orders of Protection against the

Plaintiff for all three of the Plaintiff's children over the past three years for exercising my constitutionally protected right to freedom of the speech while going through the grieving process with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

19. The Defendant also committed actions that would constitute Professional Misconduct when the Defendant asserted that New York State Social Service Law 422 (5) (b) (i) does allow unfounded CPS reported to be offered as evidence by the Plaintiff from on or about August 10, 2012 thru to on or about September 28, 2015.

20. The Defendant's actions were in complete disregard of the rules of evidence when the Defendant completely misrepresented New York State Social Service Law 422 (5) (b) (i) while acting under the color of law the Defendant asserted that the law does allow unfounded CPS reported to be offered as evidence by the Plaintiff while in open court and thru moving papers from on or about August 10, 2012 thru to on or about September 28, 2015.

21. The Defendant's actions constituted a false application of the law when the Defendant completely misrepresented New York State Social Service Law 422 (5) (b) (i) while acting under the color of law the Defendant asserted that the law does allow unfounded CPS reported to be offered as evidence by the Plaintiff while in open court and thru moving papers from on or about August 10, 2012 thru to on or about September 28, 2015.

22. The Defendant's actions constituted a deception of facts to the court when the Defendant completely misrepresented New York State Social Service Law 422 (5) (b) (i) while acting under the color of law the Defendant asserted that the law does allow

unfounded CPS reported to be offered as evidence by the Plaintiff while in open court and thru moving papers from on or about August 10, 2012 thru to on or about September 28, 2015.

23. New York State Social Service Law § 422 (5) (b) (i) states, "Notwithstanding section four hundred fifteen of this title, section one thousand forty-six of the family court act, or, except as set forth herein, any other provision of law to the contrary, an unfounded report shall not be admissible in any judicial or administrative proceeding or action; provided, however, an unfounded report may be introduced into evidence: (i) by the subject of the report where such subject is a respondent in a proceeding under article ten of the family court act or is a plaintiff or petitioner in a civil action or proceeding alleging the false reporting of child abuse or maltreatment;".

24. On or about August 10, 2012 through September 28, 2015 the Plaintiff on several occasions via motions and open court demands requested to offer into evidence the unfounded CPS report that concluded on July 30, 2012 in the Plaintiff's Article 10 Family Court proceeding.

25. The Plaintiff was also the subject of that unfounded CPS report that was being offered as evidence in the Plaintiff's Article 10 Family Court proceeding.

26. The Defendant acting under the color of law when he objected to the unfounded CPS reports from being offered as evidence by stating the New York State Law does not allow the unfounded CPS reports to be offered as evidence in the Article 10 Family Court proceeding by the Plaintiff.

27. Even after the Plaintiff brought up New York State Social Service Law § 422 (5) (b) (i) as the basis for the Plaintiff's offering of the unfounded CPS report the Defendant kept

the Defendant's same objection that New York State Law did not allow unfounded CPS reports to be offered as evidence in the Article 10 Family Court proceeding by the Plaintiff in which up to September 28, 2015 the judge did not allow the unfounded reports to be submitted as evidence by asserting what the Defendant was asserting.

28. From on or about August 10, 2012 thru to the Fact Finding Trial that was held in September 28, 2015 at the Jefferson County Family Court located in Watertown, New York the Defendant under the color of law was successful at deceiving the Jefferson County Family Court Judge Hon. Peter A. Schwerzmann that New York State Law did not allow unfounded CPS reports to be offered as evidence by the Plaintiff in the Article 10 Family Court proceeding and that New York State Social Service Law § 422 (5) (b) (i) does not apply to the Article 10 Family Court proceeding.

29. It was at the beginning of the Fact Finding Trial held on September 28, 2015 that Jefferson County Family Court Judge Hon. Peter A. Schwerzmann did a complete review of New York State Social Service Law § 422 (5) (b) (i) in his chambers prior to starting the testimony and made an overruling decision that the law does specifically apply to the Article 10 Family Court proceeding concluding that New York State Social Service Law § 422 (5) (b) (i) was designed specifically for the subject of an unfounded CPS report who is now a respondent in an Article 10 Family Court Proceeding permission to offer as evidence the unfounded CPS report and found that the information outlined in the unfounded report being offered as evidence was relevant to the case before the court.

30. This overruling decision demonstrates clearly that the Defendant committed actions under the color of law engaged in conduct involving dishonesty, fraud, deceit or

misrepresentation when the Defendant completely misrepresented New York State Social Service Law § 422 (5) (b) (i).

31. This overruling decision also demonstrates clearly that the Defendant under the color of law engaged in conduct that is prejudicial to the administration of justice with complete disregard of the rules of evidence and was a false application of the law when he completely misrepresented New York State Social Service Law § 422 (5) (b) (i).

32. The matter of Law was misrepresented by the Defendant.

33. The matter of Law was not misinterpreted by the Defendant.

34. The matter of Law could not be misinterpreted and could not have been any clearer, "an unfounded report may be introduced into evidence: (i) by the subject of the report where such subject is a respondent in a proceeding under article ten of the family court act".

35. The Defendant's misrepresentation of the matter of Law could not have been any clearer either because the Defendant asserted the unfounded reports which the Plaintiff was the subject of could not be introduced into evidence by the Plaintiff in the Article 10 Family Court Proceeding where the Plaintiff was now the respondent and up to September 28, 2015 the Jefferson County Family Court Judge believed the Defendant.

36. The subject matter and text of the specific unfounded CPS report completely discredited one of the allegations made by the Jefferson County Department of Social Services petition, specifically the should of known allegation.

37. The subject matter and text of the specific July 30, 2012 unfounded report outlined clearly that both the Plaintiff's children denied being sexually abused in 2012.

38. The known or should of known allegations were both completely fraudulent allegations presented by the Defendant and were not supported by corroborating evidence.

39. Prior to July 19, 2012 the Plaintiff was not aware of the sexual abuse by the Plaintiff's wife.

40. The July 30, 2012 unfounded report would not have been unfounded if the Jefferson County Child Protection Services Unit did not also believe the Plaintiff's children's assertions that no one touched their private parts and they did not touch anyone else's private part either.

41. Prior to July 19, 2012 the Plaintiff's children were interviewed by several social workers from the Jefferson County Children Protective Services Unit.

42. From February 12, 2012 thru July 30, 2012 the CPS report was completely investigated and ultimately was unfounded, closed, and sealed as the result of the Plaintiff's children were adamant no one had touched their private parts and they had not touch anyone else's private parts either.

43. The Plaintiff could not have known about the sexual abuse by the Plaintiff's wife because the Plaintiff's children were adamant no one had touched their private parts and they had not touch anyone else's private parts either during the six month long investigation from February 12, 2012 to July 30, 2012.

44. On October 7, 2015 there was an agreement settled between the Plaintiff and the Defendant that the Known or Should have Known allegations were to be dropped and where no long being considered at the Fact Finding Trial.

45. At the conclusion of the Finding of Facts Trial on October 7, 2015 resulted in an agreement that Plaintiff calling the Plaintiff's children liars caused an emotional impairment for both the Plaintiff's children and the Plaintiff's youngest child who was born on August 17, 2012 was derivatively neglected.

46. The October 7, 2015 agreement was based on a combination of the Defendant's misrepresentation of the law governing emotional impairment and the Plaintiff's own personal guilt for not believing the Plaintiff's children from the beginning.

47. It was shortly after the agreement was made that the Plaintiff soon learned that the Defendant had misrepresented the law governing emotional impairment.

48. The Plaintiff's actions of calling the children liars and not supporting the Plaintiff's children's emotional needs did not even cause enough emotional damage under the law to rise to the level that constitutes emotional neglect under the legal definition emotional impairment.

49. An "impairment of mental or emotional condition" includes a state of substantially diminished psychological or intellectual functioning pursuant to New York State Family Court Law § 1012(h).

50. The Plaintiff's action of calling the Plaintiff's children liars not supporting them did not cause a state of substantially diminished psychological or intellectual functioning in any of the Plaintiff's children's mental state nor could it have.

51. The Plaintiff's action of calling the Plaintiff's children liars did raise to the level that constitute emotional impairment under New York State Law because only severe acts of neglect constitute emotional impairment and the actions of the Plaintiff was not severe to rise to the level that constitutes abuse or neglect under New York State Law.

52. The Plaintiff's action of calling the Plaintiff's children liars while going through the grief process is protected speech under the United States Constitution First Amendment.

53. Based on the agreement reached the Plaintiff's actions of calling his children Liars was put the Plaintiff's actions in the same category as starving them almost to death or not taking them to the hospital when they are severely ill.

54. The Plaintiff brought the Plaintiff's concerns to the attention of the Jefferson County Family Court but was told by Jefferson County Family Court Judge Hon. Peter A. Schwerzmann it was too late and that both parties agreed it was neglect and no appeal can be made after the agreement was reached.

55. This is not an appeal, but is a complaint regarding the Professional Misconduct by the Defendant during the course of the Jefferson County Family Court Proceeding in chorus with the Defendant acting under the color of law when the Defendant penalized the Plaintiff's for exercising the Plaintiff's right to freedom of the speech which caused a deprivation of the Plaintiff's rights to freedom of the speech with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

56. The Plaintiff only agreed it was neglect because the Defendant under the color of law mispresented the Law governing emotional impairment together with the Plaintiff's own personal guilt for not believing the Plaintiff from the start.

57. The Defendant used the standard dictionary definition of emotional impairment and the not the legal definition pursuant to New York State Family Court Law § 1012(h).

58. As an officer of the court and a current member of the New York State Bar Association the Defendant took an oath to obey the Professional Code of Conduct.

59. The Plaintiff was exercising the Plaintiff's First Amendment Right to Freedom of the Speech when the Plaintiff called the Plaintiff's children Liars while going through the grieving process and the Defendant was acting under the color of law when the Defendant take action against the Plaintiff exercising the Plaintiff's right to freedom of the speech with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

60. Specifically, Rule 8.4 of the Model Rules of Professional Conduct contains the following statements on attorney misconduct:

It is professional misconduct for a lawyer to:

(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) Engage in conduct that is prejudicial to the administration of justice;

(e) State or imply an ability to influence improperly a government agency or official;

(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

61. The Defendant's misrepresenting New York State Social Service Law § 422 (5) (b) (i) and New York State Family Court Law § 1012(h) in the Jefferson County Family Court is a clear and unprecedented act of Professional Misconduct by the Defendant which resulted a complete deception of the law by the Defendant to the Jefferson County Family Court Judge.

62. The Defendant committed actions which constitute Professional Misconduct of intentionally or neglectfully misrepresenting the facts to the Jefferson County Family Court.

63. Specifically, the initial allegations that the Plaintiff knew or should have known about the sexual abuse when the Plaintiff was not aware of the sexual abuse allegations prior to July 19, 2012 disclosures and the Jefferson County Department of Social Services had zero corroborating evidence to support that the Plaintiff knew or should of known about the sexual abuse by the Plaintiff's wife.

64. The initial petition filed by the Defendant was a complete fraud regarding the known or should have known allegations against the Plaintiff, Delbert W. Hargis Jr., and the allegations were used by the Defendant to justify the removal of the Plaintiff's children from the Plaintiff's care.

65. The initial petition allegations regarding knowing or should have known against the Plaintiff were not supported by any evidence and was based solely on assumptions and nothing more.

66. During the Finding of Facts trial held on September 28, 2015 the Defendant had two witnesses testify that after speaking with the Plaintiff it sounded like the Plaintiff knew about the sexual abuse prior to CPS involvement.

67. The Defendant attempted to use assumptions to prove an assumption during the Finding of Facts trial held on September 28, 2015.

68. A Notice of Claim was filed on February 24, 2016 by the Plaintiff which outlined all the concerns described herein.

69. On March 2, 2016 the Jefferson County Attorney answered the Notice of Claim with a memo which denied the Plaintiff's February 24, 2016 Notice of Claim without giving an explanation for the denial.

70. The Defendant is not allowed to use immunity as a defense for violating the Professional Code of Conduct and for violating 42 USC § 1983 - Civil action for deprivation of the Plaintiff's First Amendment rights of Freedom of the Speech while going through the grieving process in the United States Federal Court.

71. New York Judiciary Law § 487. **Misconduct by attorneys** An attorney or counselor who: (1). Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

CAUSES OF ACTION

FIRST CAUSE OF ACTION

72. The Defendant was acting under of color of law when the Defendant violated Rule 8.4 of the Model Rules of Professional Conduct for intentionally, willfully, or neglectfully misrepresented New York State Social Service Law § 422 (5) (b) (i) and New York State Family Court Law § 1012(h) which resulted actions that constitute deception of law and dishonesty directly to the Jefferson County Family Court Judge which was a failed attempt by the defendant to prevent the Plaintiff from receiving a fair trial.

SECOND CAUSE OF ACTION

73. The Defendant, a Jefferson County Employee, was acting under the color of law when he violated 42 USC § 1983 - Civil action for deprivation of rights when he filed a Jefferson County Family Court Petition that penalized and impede the Plaintiff, Delbert

W. Hargis Jr., for exercising the Plaintiff's First Amendment Right to Freedom of the Speech while going through the grieving process with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

74. The Defendant was acting under the color of law on August 10, 2012 when his request was granted for an order of protection placed against the Plaintiff which severely limited the Plaintiff ability to see all three of the Plaintiff's children with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

75. The Defendant, a Jefferson County Employee, was acting under the color of law when he violated 42 USC § 1983 - Civil action for deprivation of rights when he filed a Jefferson County Family Court Petition that concluded with an agreement that constitutes a First Amendment violation.

PRAYER FOR RELIEF

76. WHEREFORE, plaintiff requests that this Court grant the following relief:

The Plaintiff prays that the court does not allow the defendant to use his immunity as a defense for deprivation of the Plaintiff's constitutionally protected right to freedom of the speech including the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech. Unless the Court deems it just and proper the Plaintiff is not seeking monetary relief for damages caused by the Defendant.

The Plaintiff prays that this court answer is yes to the following federal questions:

(A) Was the defendant acting under the color of law?,

(B) Where the denial statements made by the Plaintiff while the Plaintiff was going through the grieving process protected speech under the First Amendment of the United States Constitution?,

(C) Did the Defendant commit actions that constitute a depravation of the Plaintiff's constitutionally protected right to freedom of the speech a violation of 42 USC § 1983 with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech?,

(D) Did the Defendant commit actions that constitute Professional Misconduct pursuant to New York Judiciary Law § 487 in which the Plaintiff is entitled to treble damages, to be recovered in this civil action?, and

(E) Did the Defendant engage in conduct involving dishonesty, fraud, deceit or misrepresentation and engage in conduct that is prejudicial to the administration of justice?

The Plaintiff also prays the this court ruling will verify the First Cause of Action by finding that the Defendant was acting under the color of law when the Defendant committed actions that did in fact constitute a Professional Misconduct which deprived the Plaintiff a right to a fair trial.

The Plaintiff also prays the this court ruling will verify the Second Cause of Action by finding that the Defendant was acting under the color of law when the Defendant committed actions that did in fact constitute a violation of 42 USC § 1983 - Civil action for deprivation of Plaintiff's rights to freedom of the speech while going through the grieving process with the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech.

The Plaintiff would like to know once and for all that as an American the Plaintiff has a constitutionally protected right to the freedom to speak freely.

The Plaintiff would like to know once and for all as an American the Plaintiff enjoys the right to freedom of expression without the fear of losing all contact with the Plaintiff's children if the Plaintiff continued to exercise his freedom of the speech still exists in the United States of America while going through the grieving process.

***I declare under penalty of perjury that the foregoing is true and correct.***

Dated this 23rd day of March, 2016

Yours, etc.,

Delbert W. Hargis Jr.
27882 State Route 342 Lot 226
Black River, New York 13612

Sworn to before me this
23rd day of March, 2016

NOTARY PUBLIC

THERESA L. MAITLAND
Notary Public, State of New York
No. 01MA6128864
Qualified in Jefferson County
Commission Expires June 20, 20 17